(Lucas County, Court of Common Pleas.)

GLEN K. EMERY, vs. THE STATE OF OHIO.

---

Criminal Law.—What affidavit should state—The affidavit should contain such a statement of the nature and cause of the accusation as would impart to the accused, reasonable information of the charge so as to enable him to prepare his defense.

Prosecution under adulterated food law—Sufficiency of affidavit.—An affidavit substantially in the words of the statute upon which the prosecution is based, is sufficient where the statute itself sets forth and defines the offense.

Admissibility of Pharmacopoeia published after enactment of Statute.—The statute providing against the sale etc., of adulterated food, drugs etc., having been passed in 1890, which makes the United States Pharmacopoeia the standard as to the genuineness of drugs, it is error for the court in a prosecution under this statute, to admit as conclusive a United States Pharmacopoia published in 1894, without showing that the test prescribed in the later edition is the same as was prescribed in the edition when statute was passed.

---

PRATT, J.

The plaintiff brings his petition in error for the purpose of reversing a judgment rendered against him, by Peter M. Gress, a Justice of the Peace, upon a verdict of a jury in the case of the State of Ohio, vs. Glen K. Emery. Prosecution against him was brought under what is known as the "Act to Provide against the Adulteration of Food and Drugs." The affidavit was filed on the 7th of February, 1896, and charges that the defendant "did unlawfully offer, expose for sale

and did unlawfully sell to the said George Holmes, Jr., a quantity, to-wit a package, of a certain drug as, for and under and by the name of cochineal; that then and there said so-called and so-represented cochineal was adulterated in this, to-wit, that being offered and exposed for sale, under and by a name recognized in the United States Pharmacopoeia, it then and there differed in the standard or strength, quality and purity laid down in said United States Pharmacopoeia for cochineal.''

Plaintiff in error having been arrested under said affidavit, filed before said Justice, a motion to quash said affidavit and dis charge the defendant; which motion having been overruled, exception was taken. Thereupon he filed his demurrer, upon the ground that the fact stated in said affidavit did not constitute an offense against the laws of the State of Ohio; and the demurrer being overruled, he again excepted.

A trial was thereupon had before a jury; a verdict was rendered against the accused, and motion for a new trial was filed by him, also in arrest of judgment. These being overruled a fine of fifty dollars and costs was adjudged against him, to which he in due time excepted, and filed a bill of exceptions embodying all of the evidence submitted in the case.

A petition in error was therupon in due form, filed in this court, setting forth a large number of errors, there having been during the trial a great number of exceptions taken in the case.

In the argument before this court, the errors as discussed may be classified as follows:

1. The overruling of the motion to quash, and the demurrer.

2. Errors in the admission of evidence.

3. Errors in the charge of the Court.

The statute under which this prosecution was brought, was originally passed, March 20th, 1884, on the same day that the general statute in relation to the authorization and registering of pharmacists was passed. The latter law was embodied in the Revised Statutes of 1890, in Sections 4405 and following. The statute here in question—and being section 3 of the original act—having been passed as amended, April 22, 1890. Sections 1 and 2, of the original act, were not amended in 1890, but stand in the revision as they were originally passed in 1884. These provided, in substance, and so far as relates to this case, that it shall be unlawful for any person in the state of Ohio to sell or offer for sale any drug adulterated within the meaning of the act, that the term drug shall include all medicines for internal or external use, etc; and by section 3, (8807) as amended in 1890, "An article shall be deemed to have been adulterated within the meaning of this act: (a) In the case of drugs (1) If when sold under or by a name recognized in the United States Pharmacopoeia, it differs from the standard of strength, quality or purity laid down therein.''

The affidavit in this case—as will be seen from the quotation already made—embodies this last quotation from the statute, and makes the violation of this provision the essence of the charge.

The first question in order for discussion here is:

1. As to the sufficiency of this affidavit. Objection was taken both to the form and substance of the affidavit upon the motion to quash and the demurrer, and extended argument has been made before me as to both objections.

So far as the objections to the mere form are concerned, they do not seem to me to be material; and so far as the substance is concerned, the position taken by counsel for the State, that it is only necessary that the affidavit should contain such a statement of the nature and cause of accusation as would impart to the accused, reasonable information of the charge made, so as to enable him to prepare for his defense, is substantially correct. The affidavit in this case is made substantially in the words of the clause of the statute upon which the prosecution is based; and while the affidavit might well have been more full in other respects, yet if the statute itself does set forth and define an offense, it seems to me that the affidavit · is sufficient; in other words, it is as good as the statute.

The question that has given me the most trouble in this case is, whether this statute, under proper rules of construction, does sufficiently define the offense for which the prosecution is brought? For the purpose of getting light from the elementary works, I have examined quite fully the well known works of *Bishop on Statutory Crimes*, and *Endlich on Construction of Statutes*, both of which very fully 'discuss the question of penal statutes with citations of a multitude of decisions of courts.

There would seem to be no chance for difference of opinion upon the question that penal statutes have largely been modified since the days when extreme penalties were inflicted for 'trivial offenses; but the rule still holds good that in penal statutes it is not sufficient that the offense be within the *mischief*, but it must be within the *words* of the statute: the transaction must be covered not only by the *spirit*, but by the *letter* of the statute, and the statute cannot be extended by the courts by construction so as to include an offense not within both the spirit and the letter of the statute. To quote from the opinion of the court, in a case found in 50 Pa. St., page 207, speaking of the rule of strict construction: "The purpose of the rule is to prevent acts from being brought within the scope of punishment because courts may suppose they fall within the spirit of the law, though not within its terms. To create offenses by mere construction, is not only to entrap the unwary, but to injure the rights of citizens." All citizens are bound to take notice of the general statutes of their state, and cannot plead ignorance of these statutes in excuse. It is also competent for the legislature to provide that private or local acts may be considered as general in their application, and parties and citizens be required to take notice of them; but it is very questionable, whether it is competent for the legislature to provide that the citizen shall be required at his peril to take notice of rules or regulations of any persons or body of persons outside of the state or not amenable to the state.

During the argument of the case, I inquired of counsel whether they could point me to any statute, in this or any other state, which had undertaken to define an offense in any other way than by the statute itself. Both of the counsel conceded that they had not been able to find any such statute, with the suggestion that it might be competent for the Legislature of Ohio, to provide that the offense of larceny might be such as it was defined to be by the statutes of another state, but no citation was made of any such statute, and it seems to me to be very questionable whether any such provision could be sustained.

This case, however, may be distinguished from that in which the provision is sought to be made in reference to an offense involving moral turpitude, or which was indictable at common law. And upon this point counsel for the State rely upon the decision of our Supreme Court, recently made and reported in the current volume of the Law Bulletin, page 115: The State of Ohio v. Dennis Kelly. The prosecution in that case was brought under this same statute, but under the provision of it in reference to the sale of adulterated food. The exact point involved was, whether ignorance of the accused of the adulteration of the article would avail him as a defense? The court's opinion—by Shauck, Justice, is based upon a distinction between this statute and those involving the punishment of acts involving moral turpitude. Instead of being an act of the latter kind, it is said that the purpose of this act is to protect the public against the hurtful consequences of the sales of adulterated articles. Not to quote here at length, the concluding paragraph of this opinion is as follows:

"In the enactment of this statute, it was the evident purpose of the general assembly to protect the public against the harmful consequences of the sales of adulterated food and drugs, and, to the end that its purpose might not be defeated, to require the seller at his peril to know that this article which he offers for sale, is not adulterated, or to demand of those from whom he purchases, indemnity against the penalties that may be imposed upon him, because of their concealment of the adulteration of the articles"

Upon full and careful consideration, I have come to the conclusion that the principle announced by the court in that case is applicable to the question here; and that in

accordance with this principle, the accused in this case was required at his peril to know that the drug offered for sale was within the rule laid down in the Pharmacopoeia; and if so, the statute is sufficient to maintain the prosecution, and the offense is sufficiently charged in the affidavit; and it is upon the authority of this decision that I so hold.

2. Objections to evidence.

Numerous objections were made upon questions involved in the introduction of evidence, both as to the admission and the exclusion of parts of that offered. A few of these exceptions have been relied upon in argument; and as to those which have been relied upon, there is only one which I consider material, and that is as to the admission of the Pharmacopoeia in evidence.

Some of the evidence, especially that in relation to the exposure of this drug in his place upon the shelves of the accused, I consider immaterial; and if a further trial should be had in this case, that offered both on the part of the prosecution and the defense, had better be omitted, for the reason that it tends to confuse the jury by diverting their minds from the material to the immaterial issues of the case. But I do not think the errors in this respect would be what is so frequently termed by the courts of review as "reversible errors."

The question, however, which it is important to consider, is, as to the introduction of the Pharmacopoeia. The edition of the Pharmacopoeia offered in evidence is labelled upon its back with the year "1890;" but upon its title-page it is said to be "Official from January 1st, 1894." The provision in reference to the drug here in question—cochineal—is as follows: "When completely incinerated, cochineal should leave not more than five per cent of ash".

This prosecution is under a statute passed in 1890, and this edition of the Pharmacopoeia, provides a test made in 1894, and no evidence was introduced to show whether the test at the time of the passage of the statute was the same as that named in the copy introduced in evidence. It is claimed on the part of the plaintiff in error, that if the legislature saw fit to adopt as a standard the United States Pharmacopoeia, that it must of necessity be considered as adopting the Pharmacopoeia, then in existence, and that it cannot be supposed that the legislature intended to create as a lawful standard, defining an offense, a book not then published, and which had not been even compiled or prepared for publication. The legislature itself could not know what such a book would contain. It is claimed by counsel for the state, that the United States Pharmacopoeia, is a recognized scientific publication; that the compilation is made by an association of physicians which has been in existence in the United States since the year 1817, and which published the book, which is revised every ten years. The book itself offered in evidence shows this statement as the nature of the book to be correct; and it is claimed by counsel in argument that it was competent for the legislature to adopt it as a well known book of science; and it was also claimed that the presumption is that the provisions of the edition of 1809, which was offered, were the same as those of the previous publications. It seems to me, however, that this contention on the part of the state cannot be sustained, but that the rule as claimed by counsel for plaintiff in error is the correct one. This book was not one that was a completed work; but the very object and purpose of the association was to make a revision from time to time for the purpose of correcting or improving upon classifications as made at former meetings of the association and in former editions. It will be conceded that the presumption might go forward; but it does not follow that it would go backward. It is like a statute of the state; when we find a statute in existence at a certain time, it is presumed that such a statute remains in force until it is repealed or amended; but the existence of a statute in one year does not presuppose that the statutes were the same in former years. It even presupposes the contrary, as I would think, and so here, it seems to me that the construction must necessarily be that the legislature in the year 1890, in providing a test to be made from any book or outside source, must be held to have contemplated one that was then in existence, and of the provisions of which they may be presumed to have had knowledge; otherwise I can see no grounds whatever upon which the statute could be supported.

My conclusion, then, upon this point, is, that the admission of the edition of the Pharmacopoeia in 1894, in evidence, was an error, and one vital in the case, and which must cause the reversal of this judgment against the plaintiff in error.

3. *The Charge of the Court.*

The Pharmacopoeia having been improperly received in evidence, the charge of the court, that its evidence was conclusive, was erroneous for that reason.

If the Pharmacopoeia which was in existence at the time of the passage of the statute, had been the one in evidence, then the charge would, in that respect, have been correct.

There are some criticisms by counsel made upon the charge in other respects, but these do not seem to be material.

The reversal is based wholly upon the ground of the admission of the Pharmacopoeia, compiled and published after the passage of the act, and for that reason the judgment is *reversed,* and the cause remanded to the justice.